## IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| THERESA ORTIZ, | ) | CASE NO. 1:14-CV-00917 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | VECCHIARELLI |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social | ) | |
| Security, | ) | **MEMORANDUM OPINION AND** |
| | ) | **ORDER** |
| Defendant. | | |

Plaintiff, Theresa Ortiz ("Plaintiff"), challenges the final decision of Defendant,

Carolyn W. Colvin, Acting Commissioner of Social Security ("Commissioner"), denying

her applications for Period of Disability ("POD"), Disability Insurance Benefits ("DIB"),

and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security

Act, 42 U.S.C. §§ 416(i), 423, 1381 *et seq.* ("Act").  This case is before the undersigned

United States Magistrate Judge pursuant to the consent of the parties entered under

the authority of 28 U.S.C. § 636(c)(2).  For the reasons set forth below, the

Commissioner's final decision is AFFIRMED.

### I.    PROCEDURAL HISTORY

On July 13, 2011, Plaintiff filed her applications for POD, DIB, and SSI, alleging

a disability onset date of November 12, 2005.  (Transcript ("Tr.") 142.)  The claims were

denied initially and upon reconsideration, and Plaintiff requested a hearing before an

administrative law judge ("ALJ").  (*Id.*)  On October 10, 2012, an ALJ held Plaintiff's

hearing.  (*Id.*)  Plaintiff participated in the hearing, was represented by counsel, and

testified.  (*Id.*)  A vocational expert ("VE") also participated and testified.  (*Id.*)  On

December 12, 2012, the ALJ found Plaintiff not disabled.  (Tr. 139.)  On March 10,

2014, the Appeals Council declined to review the ALJ's decision, and the ALJ's decision

became the Commissioner's final decision.  (Tr. 1.)

On April 29, 2014, Plaintiff filed her complaint to challenge the Commissioner's

final decision.  (Doc. No. 1.)  The parties have completed briefing in this case.  (Doc.

Nos. 15, 16.)

Plaintiff asserts the following assignments of error: (1) The ALJ did not properly

evaluate the opinions of treating and examining health providers; (2) the ALJ erred in

finding that Plaintiff could perform her past relevant work as a receptionist and server;

and (3) new and material evidence provides good cause for remand.

## II.    EVIDENCE

### A.    Personal and Vocational Evidence

Plaintiff was born in September 1960 and was 52-years-old at the time of her

administrative hearing.  (Tr. 217, 376.)  She attended school through the 12th grade

and obtained her GED.  (Tr. 218.)  She had past relevant work as a food

server/waitress, a receptionist, and an accounting clerk.  (Tr. 237-238.)

### B.    Medical Evidence

The ALJ found that Plaintiff had the following severe impairments: degenerative

disc disease of the spine, fibromyalgia with kyphoscoliosis, chronic pain syndrome,

depressive disorder, anxiety disorder, and personality disorder.  (Tr. 145.)  Plaintiff's

challenges to the ALJ's decision concern mainly her mental impairments and the VE's

testimony, however.  Accordingly, the Court will limit its summary of Plaintiff's medical

2

records to evidence most relevant to those issues.

### 1.    Medical Reports

Plaintiff participated in treatment at Recovery Resources where she treated with Richard Hill, M.D.  On September 13, 2011, Plaintiff reported pain, panic attacks, anxiety, and agoraphobia.  (Tr. 680.)  On October 4, 2011, Dr. Hill adjusted Plaintiff's medications and diagnosed generalized anxiety disorder.  (Tr. 677-678.)  His treatment notes indicate that he questioned whether Plaintiff might have bipolar disorder and whether her anxiety might be the result of hypomania.  (Tr. 678.)  Plaintiff cancelled several therapy appointments due to pain and issues with transportation.  (Tr. 671-676.)  She returned to Recovery Resources on January 18, 2012, with complaints of increased pain, depression, anxiety, and feelings of helplessness.  (Tr. 669.)

On June 20, 2012, Plaintiff saw Anna-Lynn Tamayo-Reyes, M.D., at Recovery Resources for an initial assessment.  (Tr. 727-728.)  Dr. Tamayo-Reyes noted that Plaintiff used to see Leann Cavanagh, M.Ed, PCC, at Recovery Resources and was a transfer from Dr. Hill.  (Tr. 727.)  Dr. Tamayo-Reyes indicated that no one at Recovery Resources had seen Plaintiff since February 2012.  (*Id.*)  Plaintiff claimed that she could not go out due to panic attacks and stated that this kept her from going to therapy.  (*Id.*)  Plaintiff reported that she had tried and failed a number of medications for her mental health problems.  (*Id.*)  Dr. Tamayo-Reyes reported that Plaintiff demonstrated good hygiene and grooming and that she had good eye contact.  (*Id.*)  The remainder of the report consisted of discussions about possible medications and a plan for treatment.  (Tr. 728.)  Plaintiff requested benzodiazepine, but Dr. Tamayo-Reyes informed her that

3

she would only prescribe that medication in the short-term and only in combination with psychotherapy and other medications deemed reasonable to control symptoms in the long term.  (*Id.*)  Dr. Tamayo-Reyes prescribed a trial of Doxepin and Clonazepam.  (*Id.*)  She referred Plaintiff back to therapy and asked her to return to the clinic in four weeks.  (*Id.*)

On July 18, 2012, Dr. Tamayo-Reyes completed a form entitled "Medical Source Statement of Patient's Mental Capacity."  (Tr. 733-734.)  The form required Dr. Tamayo-Reyes to rate Plaintiff's abilities in three categories.  (*Id.*)  The first category, "Making Occupational Judgments," asked for ratings in 12 abilities.  (*Id.*)  Dr. Tamayo-Reyes rated one area, "use judgment," as fair, and rated the other 11 areas as poor.  (*Id.*)  In the next category, "Intellectual Functioning," Dr. Tamayo-Reyes rated Plaintiff's ability to understand, remember, and carry out simple jobs instructions as fair, and Plaintiff's ability to understand, remember, and carry out complex job instructions and her ability to understand, remember, and carry out detailed but not complex job instructions as poor.  (Tr. 734.)  The third category, "Making Personal and Social Adjustments," required ratings in six areas.  (Tr. 733.)  Dr. Tamayo-Reyes rated Plaintiff's abilities in two areas–maintaining appearance and managing funds and schedules–as fair.  (*Id.*)  She rated Plaintiff's abilities in the other four areas as poor.  (*Id.*)

### 2.     Agency Reports

On September 24, 2011, Plaintiff saw Paul Deardorff, Ph.D., for a consultative psychological examination.  (Tr. 646-653.)  Plaintiff reported that she completed her

application for disability without assistance and at her own initiative.  (Tr. 647.)  She

stated that she suffered from "continual pain everywhere."  (*Id.*)  She also stated that

she suffered from depression and anxiety and described herself as continually anxious.

(*Id.*)  She reported daily panic attacks during which she experienced a rapid heartbeat,

breathing difficulties, hot flashes, trembling, and thoughts of escape.  (*Id.*)  She also

noted that she avoided people.  (*Id.*)  Plaintiff stated that she had two children and got

along well with them.  (Tr. 648.)  Plaintiff told Dr. Deardorff that her emotional difficulties

began some time ago but that she did not see a mental health provider until the past

year.  (Tr. 649.)  She reported no psychiatric hospitalizations.  (*Id.*)  She also stated that

she found Xanax to be helpful.  (*Id.*)  Plaintiff reported that she had worked on a part-

time basis during the previous year.  (*Id.*)

Dr. Deardorff commented that Plaintiff appeared anxious and depressed but did

not exhibit any eccentricities of behavior.  (*Id.*)  He described Plaintiff as preoccupied

with her pain and noted that she mentioned intrusive thoughts and nightmares.  (Tr.

650.)  He described Plaintiff as alert and oriented to time, place, person, and situation.

(*Id.*)  Dr. Deardorff found that Plaintiff's remote recall was adequate and her short-term

recall fell at the lower end of the average range.  (*Id.*)  He rated Plaintiff's attention and

concentration skills as "marginally adequate."  (*Id.*)  Plaintiff had no difficulty responding

to simple questions.  (*Id.*)  Dr. Deardorff rated Plaintiff's reasoning abilities as adequate

and noted that Plaintiff's judgment appeared to be sufficient for her to make decisions

affecting her future and to conduct her own living arrangements efficiently.  (Tr. 650-

651.)  He opined that Plaintiff might have difficulty coping with the stress and pressures

associated with day-to-day work activity.  (Tr. 653.)  Dr. Deardorff concluded that Plaintiff's prognosis was "not strong."  (Tr. 652.)

Cynthia Waggoner, Psy.D., and Karen Steiger, Ph.D., reviewed Plaintiff's case file at the request of the State agency on October 7, 2011, and February 6, 2012, respectively.  Both expressed the opinion that Plaintiff can complete detailed work, but should not be expected to complete complex work; and she should have only superficial contact with the general public but would have no difficulties with co-workers and supervisors.  (Tr. 256, 288-289.)  They then stated that Plaintiff should be able to relate superficially with coworkers and supervisors.  (*Id.*)

Following Plaintiff's administrative hearing, Plaintiff attended a psychological consultative examination with clinical psychologist Richard N. Davis on October 29, 2012.  (Tr. 758-762.)  Plaintiff told Mr. Davis that she did not have trouble getting along with people in positions of authority or with fellow workers.  (Tr. 759.)  She also told Mr. Davis that she "wouldn't hire herself at this point in her life because she wouldn't be able to show up for work because of all of her physical problems."  (*Id.*)  Mr. Davis noted that Plaintiff spoke coherently and that her flow of conversation and thought was satisfactory.  (Tr. 760.)  Plaintiff reported that she had frequent panic attacks and had been hospitalized due to panic attacks.  (*Id.*)  She reported no delusions, hallucinations, grandiosity, omnipotence, or omniscience.  (*Id.*)  Mr. Davis diagnosed major depressive disorder, recurrent, severe without psychotic features; and panic disorder with agoraphobia.  (Tr. 761.)  Mr. Davis opined that Plaintiff was severely limited in her ability to think logically and use common sense and judgment.  (*Id.*)  He concluded that Plaintiff would have difficulty understanding, remembering, and carrying out more than

6

the simplest of instructions because "she is more involved with her pain and lets that override her ability to pay attention to that which is going on."  (Tr. 760.)

Mr. Davis also completed a form entitled "Medical Source Statement of Ability to do Work-Related Activities (Mental)."  (Tr. 763.)  Mr. Davis opined that Plaintiff had marked[1] limitations in the following areas: carrying out simple instructions; understanding, remembering, and carrying out complex instructions; and making judgments on complex work-related decisions.  (*Id.*)  He also opined that Plaintiff was moderately to markedly limited in her ability to interact appropriately with the public.  (Tr. 764.)

**C.    Hearing Testimony**

   **1.    Plaintiff's Hearing Testimony**

Plaintiff testified that she was a person closely approaching advanced age.  (Tr. 217.)  She had not had a driver's license since 2008 or 2009, when she decided not to renew her license.  (Tr. 218.)  Plaintiff stated that she obtained a GED and that she could read, write, and do simple math problems.  (*Id.*)

Plaintiff testified that she currently did some phone work from her home for Purple Heart, which involved asking people to donate clothes or household items.  (Tr. 219.)  She estimated that she worked about nine hours each week.  (Tr. 219-220.)  Plaintiff testified that she was unable to work due to chronic pain, panic attacks, anxiety, a feeling that she could not leave her house, and an inability to sit or stand for long

---

[1]    The form defined "marked" as follows: "There is serious limitation in this area.  There is substantial loss in the ability to effectively function."  (Tr. 763.)

7

periods of time.  (Tr. 220.)  Plaintiff described her pain as "like somebody holding a blowtorch to my back and digging in with an ice pick."  (*Id.*)  Plaintiff stated that she went to Recovery Resources once every two months for mental health treatment and counseling.  (Tr. 224.)

### 2.    Vocational Expert's Hearing Testimony

Brad Sulcon, a vocational expert, testified at Plaintiff's hearing.  The VE testified that Plaintiff had past relevant work as a food server or waitress, a receptionist, and an accounting clerk.  (Tr. 238.)  The VE indicated that Plaintiff's past work as a server or waitress was classified as a semi-skilled, light job, but that Plaintiff performed it at the medium level.  (*Id.*)  The VE testified that Plaintiff's work as a receptionist was classified and performed as a semi-skilled, sedentary job.  (*Id.*)

The ALJ asked the VE to assume a hypothetical individual of Plaintiff's age and education level who could perform light work except: no climbing of ladders, ropes, or scaffolds; frequent climbing of ramps and stairs; and occasional stooping, crouching, crawling, and overhead reaching.  (Tr. 238.)  The individual should avoid complex tasks and have no more than superficial contact with the public.  (*Id.*) The VE testified that the hypothetical individual could perform Plaintiff's past work as a server as classified (light) but not as performed (medium).  (Tr. 239.)  The VE further testified that the individual could perform Plaintiff's past work as a receptionist, but not her past work as an accounting clerk.  (*Id.*)  The VE added that there would be no jobs that the hypothetical individual with the aforementioned residual functional capacity (RFC) could perform if the individual would be off task at least 20 percent of the time.  (*Id.*)  The VE further

testified that the hypothetical individual would not be capable of performing Plaintiff's past work or any other work if the individual would miss two to three days of work per month on a regular and ongoing basis.  (Tr. 239-240.)

### III.   STANDARD FOR DISABILITY

A claimant is entitled to receive benefits under the Social Security Act when she establishes disability within the meaning of the Act.  20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs., 667 F.2d 524 (6th Cir. 1981).*  A claimant is considered disabled when she cannot perform "substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  20 C.F.R. § 416.905(a).

The Commissioner reaches a determination as to whether a claimant is disabled by way of a five-stage process.  20 C.F.R. §§ 404.1520(a)(4) *and* 416.920(a)(4); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).  First, the claimant must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits.  20 C.F.R. §§ 404.1520(b) *and* 416.920(b).  Second, the claimant must show that she suffers from a "severe impairment" in order to warrant a finding of disability.  20 C.F.R. §§ 404.1520(c) *and* 416.920(c).  A "severe impairment" is one that "significantly limits . . . physical or mental ability to do basic work activities."  *Abbot*, 905 F.2d at 923.  Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, the claimant is presumed to be disabled

9

regardless of age, education or work experience.  20 C.F.R. §§ 404.1520(d) *and* 416.920(d).  Fourth, if the claimant's impairment does not prevent her from doing her past relevant work, the claimant is not disabled.  20 C.F.R. §§ 404.1520(e)-(f) *and* 416.920(e)-(f).  For the fifth and final step, even if the claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled.  20 C.F.R. §§ 404.1520(g), 404.1560(c), *and* 416.920(g).

## IV.  SUMMARY OF COMMISSIONER'S DECISION

The ALJ made the following findings of fact and conclusions of law:

1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2014.

2. The undersigned dismisses the claimant's request for hearing as *res judicata* through October 29, 2010, and considers only the unadjudicated period commencing October 30, 2010.

3. The claimant has not engaged in substantial gainful activity since the unadjudicated period commencing on October 30, 2010.

4. The claimant has the following severe impairments: degenerative disc disease of the spine, fibromyalgia with kyphoscoliosis, chronic pain syndrome, depressive disorder, anxiety disorder, and personality disorder.

5. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

6. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b), except no climbing of ladders, ropes, or scaffolds; frequent climbing of ramps and stairs; occasional stooping, crouching, crawling, and overhead reaching; and the mental limitations that she should avoid complex tasks and have no more than superficial contact with the public.

10

7.   The claimant is capable of performing past relevant work as a receptionist and server.  This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity.

8.   The claimant has not been under a disability, as defined in the Social Security Act, from October 30, 2010, through the date of this decision.

(Tr. 145-155.)

## V.   LAW & ANALYSIS

### A.   Standard of Review

Judicial review of the Commissioner's decision is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards.  *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010).  Review must be based on the record as a whole.  *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001).  The court may look into any evidence in the record to determine if the ALJ's decision is supported by substantial evidence, regardless of whether it has actually been cited by the ALJ.  *Id.*  However, the court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence.  *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

The Commissioner's conclusions must be affirmed absent a determination that the ALJ failed to apply the correct legal standards or made findings of fact unsupported by substantial evidence in the record.  *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009).  Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as

11

adequate to support a conclusion.  *Brainard*, 889 F.2d at 681.  A decision supported by substantial evidence will not be overturned even though substantial evidence supports the opposite conclusion.  *Ealy*, 594 F.3d at 512.

### B.    Plaintiff's Assignments of Error

#### 1.    The ALJ Did Not Properly Evaluate the Opinions of Treating and Examining Health Providers.

Plaintiff argues that the ALJ failed to adequately evaluate and weigh evidence from the following health professionals: (1) Dr. Tamayo-Reyes, a psychiatrist at Recovery Resources; (2) Dr. Deardorff, a state agency clinical psychologist; and (3) Mr. Davis, a state agency clinical psychologist.  The Court will address each separately.

##### a.  Dr. Tamayo-Reyes

Plaintiff argues that the ALJ erred by giving less than controlling weight to the opinion of Dr. Tamayo-Reyes.  On July 18, 2012, Dr. Tamayo-Reyes completed a medical source statement assessing Plaintiff's mental capacity.  (Tr. 733-734.)  Dr. Tamayo-Reyes opined that Plaintiff's ability to function was "poor" with respect to 17 of 21 mental-related, work-related abilities.  (*Id.*)  The ALJ gave "limited weight" to Dr. Tamayo-Reyes' opinions because "they were not consistent with the treatment records or the weight of the other medical evidence in the record, and because they appear to be based on the claimant's subjective complaints and not on the doctor's own professional opinion or objective examination of the claimant."  (Tr. 154.)  Plaintiff argues that the ALJ's explanation for assigning less than controlling weight to Dr. Tamayo-Reyes' opinion does not satisfy the "good reasons" requirement of the treating

12

source rule.[2]

Plaintiff's argument that the ALJ improperly evaluated Dr. Tamayo-Reyes' opinion under the treating source rule rests on the assumption that Dr. Tamayo-Reyes was one of Plaintiff's treating psychiatrists, or a "treating source."  A treating source is defined as "your own physician, psychologist, or other acceptable medical source who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you." 20 C.F.R. § 404.1502. Generally, an ongoing treatment relationship exists when the patient sees or has seen the treating source with a frequency consistent with accepted medical practice for the type of evaluation required for the medical condition at issue. _Id._

"Classifying a medical source requires us to interpret the definitions in [20 C.F.R.] § 404.1502, a question of law we review _de novo_." _Smith v. Comm'r of Soc. Sec._, 482 F.3d 873, 876 (6th Cir. 2007).  This Court must accord substantial deference

---

[2]    "An ALJ must give the opinion of a treating source controlling weight if he finds the opinion 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and 'not inconsistent with the other substantial evidence in the case record.'" _Wilson v. Comm'r of Soc. Sec._, 378 F.3d 541, 544 (6th Cir. 2004) (quoting 20 C.F.R. § 404.1527(d)(2)) (internal quotes omitted).  If an ALJ decides to give a treating source's opinion less than controlling weight, he must give "good reasons" for doing so that are sufficiently specific to make clear to any subsequent reviewers the weight given to the treating physician's opinion and the reasons for that weight.  _See Wilson_, 378 F.3d at 544 (quoting S.S.R. 96-2p, 1996 WL 374188, at *5 (S.S.A.)).  This "clear elaboration requirement" is "imposed explicitly by the regulations," _Bowie v. Comm'r of Soc. Sec._, 539 F.3d 395, 400 (6th Cir. 2008), and its purpose is to "let claimants understand the disposition of their cases" and to allow for "meaningful review" of the ALJ's decision, _Wilson_, 378 F.3d at 544 (internal quotation marks omitted).  Where an ALJ fails to explain his reasons for assigning a treating physician's opinion less than controlling weight, the error is not harmless and the appropriate remedy is remand. _Id._

13

to any factual finding by the ALJ bearing on the question. *Id.* Here, it is not entirely clear from his decision whether the ALJ considered Dr. Tamayo-Reyes to be a treating source, as the ALJ did not make a definitive finding on the record. Plaintiff assumes, however, that because Dr. Tamayo-Reyes is associated with Recovery Resources, and Plaintiff treated at Recovery Resources for over one year, "Dr. Tamayo-Reyes, through her affiliation with Recovery Resources, has the necessary relationship with [Plaintiff] to be considered a treating source." (Plaintiff's Brief ("Pl.'s Br.") at 18.) Plaintiff does not offer any additional explanation to support her assumption that Dr. Tamayo-Reyes is a treating source and, therefore, protected by the treating source rule. The Commissioner responds that Dr. Tamayo-Reyes was not one of Plaintiff's treating physicians, as it appears from the record that Plaintiff treated with Dr. Tamayo-Reyes only once–in June 2012–before Dr. Tamayo-Reyes completed her medical source statement on July 18, 2012. (Tr. 733-734.)

While Plaintiff is correct in noting that she treated at Recovery Resources for over one year, Plaintiff has not shown that she treated with Dr. Tamayo-Reyes during that entire period. Rather, the record indicates that Plaintiff saw Dr. Tamayo-Reyes for the first time in June 2012, during which time Dr. Tamayo-Reyes noted that Plaintiff had not been seen at Recovery Resources since her last visit with Dr. Hill in February 2012. (Tr. 727.) Thus, Dr. Tamayo-Reyes completed her July 2012 medical source statement based on a single June visit with Plaintiff. As Plaintiff had a very limited treatment relationship with Dr. Tamayo-Reyes, the Court finds that Dr. Tamayo-Reyes was not one of Plaintiff's treating sources.

Moreover, as the Commissioner argues in her Brief, even if Dr. Tamayo-Reyes

14

was a treating source, substantial evidence supports the ALJ's decision to assign limited weight to her opinion. The opinion Dr. Tamayo-Reyes offered is merely a check-list form that does not appear to be based on an examination of Plaintiff. (Tr. 733-734.) Indeed, when asked to provide the medical/clinical findings that support her opinions, Dr. Tamayo-Reyes wrote: "[Plaintiff] has depression and anxiety, as well as fibromyalgia that affects major areas of functioning. She has panic attacks particularly when she leaves home, frequently cries, poor sleep, and has low energy." (Tr. 734.) Thus, as the ALJ noted in rejecting Dr. Tamayo-Reyes' opinion, Dr. Tamayo-Reyes appeared to base her conclusions not on her own examination of Plaintiff or other objective findings, but on Plaintiff's self-reports and prior diagnoses. It is well established that the "mere diagnosis" of a condition "says nothing" about its severity, or its effect on a claimant's ability to perform work. Higgs v. Bowen, 880 F.2d 860, 863 (6th Cir. 1988). In light of Dr. Tamayo-Reyes' limited contact with Plaintiff and the limited information contained in her medical source statement, the Court concludes that the ALJ did not err in his evaluation of Dr. Tamayo-Reyes' opinion.

### b. Dr. Deardorff

Plaintiff also argues that the ALJ erred in his evaluation of the opinion of state agency clinical psychologist Dr. Deardorff. On September 24, 2011, Dr. Deardorff opined that Plaintiff had no difficulty attending or responding to simple questions or following simple instructions; she interacted appropriately with the examiner and stated that she had no difficulty interacting with others while working, although she has no friends; and she may well have difficulty coping with the stress and pressures associate

15

with day-to-day work activity.  (Tr. 652-653.)  In his hearing decision, the ALJ assigned "considerable weight" to Dr. Deardorff's opinion, noting that the opinion was "generally consistent with the evidence as a whole."  (Tr. 153.)

Plaintiff asserts that the ALJ did not assign appropriate weight to Dr. Deardorff's opinion and that the ALJ's RFC determination does not account for all of Dr. Deardorff's assessed limitations, yet Plaintiff fails to explain why this is so.  First, Plaintiff does not explain why Dr. Deardorff's opinion is entitled to more than "considerable" weight; indeed, the ALJ purports to have accepted Dr. Deardorff's opinion in its entirety. Second, Plaintiff fails to show how Dr. Deardorff's opinion was any more restrictive than the ALJ's RFC determination. The Commissioner adequately demonstrates the deficiencies in Plaintiff's argument, noting: "[Plaintiff] has not asserted, for example, that had the ALJ included one of . . . Dr. Deardorff's additional limitations in to the mental RFC finding and included it in his hypothetical question to the vocational expert a different result would have been reached.  Indeed, she does not even identify which of Dr. Deardorff's limitations the ALJ allegedly failed to consider."  (Defendant's Brief ("Def.'s Br.") 11-12.)   Accordingly, the Court finds that the ALJ did not err in his evaluation of Dr. Deardorff's opinion, and even if he did, Plaintiff has offered no explanation for how that error would affect the outcome of her case.

### c.  Mr. Davis

Following her administrative hearing, Plaintiff saw clinical psychologist Richard Davis for a consultative examination.  (Tr. 758-764.)  Mr. Davis opined that Plaintiff had marked limitations in the following areas: carrying out simple instructions;

16

understanding, remembering, and carrying out complex instructions; and making judgments on complex work-related decisions.  (Tr. 763.)  Mr. Davis also opined that Plaintiff was moderately to markedly limited in her ability to interact appropriately with the public.  (Tr. 764.)  The ALJ gave "less weight" to Mr. Davis' opinion, finding that it was "obvious from the report that [Mr. Davis] relied heavily on what the claimant told him."  (Tr. 154.)  Plaintiff argues that the ALJ erred in his evaluation of Mr. Davis' opinion, because "Mr. Davis has supported his opinion by evaluation and testing, his opinion is consistent with the opinions of Dr. Deardorff and Dr. Tamayo-Reyes, and he has the necessary speciality."  (Pl.'s Br. 22-23.)

It is well established that an ALJ is not required to discuss each and every piece of evidence in the record for his decision to stand.  *See, e.g., Thacker v. Comm'r of Soc. Sec.*, 99 F. App'x 661, 665 (6th Cir. 2004).  However, where the opinion of a medical source contradicts his RFC finding, an ALJ must explain why he did not include its limitations in his determination of a claimant's RFC.  *See, e.g., Fleischer v. Astrue*, 774 F. Supp. 2d 875, 881 (N.D. Ohio 2011) (Lioi, J.) ("In rendering his RFC decision, the ALJ must give some indication of the evidence upon which he is relying, and he may not ignore evidence that does not support his decision, especially when that evidence, if accepted, would change his analysis.").  Social Security Ruling 96-8p provides, "[t]he RFC assessment must always consider and address medical source opinions.  If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain  why the opinion was not adopted."  SSR 96-8p, 1996 WL 374184, *7 (July 2, 1996).

17

Because Mr. Davis was a consultative psychologist rather than a treating source, the ALJ was required only to acknowledge that Mr. Davis' opinions contradicted the ALJ's RFC finding, and explain why he did not include Mr. Davis' assessed limitations in his determination of Plaintiff's RFC.  A review of the ALJ's decision indicates that the ALJ adequately explained why he chose to give "less weight" to Mr. Davis' opinion.  (Tr. 154.)  While Plaintiff asserts that Mr. Davis supported his opinion with evaluation and testing, a review of the report suggests otherwise.  In the first paragraph of his report, Mr. Davis explicitly stated that he saw Plaintiff for an Adult Clinical Interview and that he did not administer any tests.  (Tr. 758.)  As Mr. Davis did not consult medical evidence from other health care professionals or conduct his own tests to determine Plaintiff's mental limitations, it appears that he relied heavily, if not solely, on Plaintiff's self-reports.  The ALJ concluded that Plaintiff was not fully credible because the evidence in the record failed to support many of her allegations about the severity of her symptoms. (Tr. 153.)  The ALJ noted, as an example, that Plaintiff told Mr. Davis that she suffered from panic attacks, but those alleged panic attacks were not established in the record. (*Id.*)  The ALJ thus concluded that Plaintiff "clearly exaggerated her physical symptoms with Mr. Davis." (*Id.*)

The ALJ's assessment of Mr. Davis' opinion is sufficiently clear to allow meaningful judicial review.  The ALJ was clear in rejecting Mr. Davis' opinion because it relied heavily on Plaintiff's self-reports, which the ALJ found to be less than fully credible for specific articulated reasons.  (Tr. 153-154.)  While Dr. Davis' opinion may be favorable to Plaintiff's position, the ALJ has adequately explained why he chose not to rely on it in determining Plaintiff's RFC.  Plaintiff's disagreement with how the ALJ

18

weighed and resolved the medical opinion evidence is not a valid basis for reversing the ALJ's decision.  *See* Bass v. McMahon, 499 F.3d 506, 509 (6th Cir. 2007) ("If the ALJ's decision is supported by substantial evidence, then reversal would not be warranted even if substantial evidence would support the opposite conclusion.") Accordingly and for the foregoing reasons, Plaintiff's first assignment of error does not present a basis for remand.

## 2. The ALJ Erred in Finding That Plaintiff Could Perform Her Past Relevant Work as a Receptionist and Server.

At Plaintiff's hearing, the VE testified that Plaintiff could return to her past work as a receptionist and server.  Plaintiff argues that the ALJ erred in relying on the testimony of the VE to find that Plaintiff could perform her past work, because the receptionist and server positions are semi-skilled jobs that require continuous and significant interaction with the public, and the ALJ limited Plaintiff to no work involving complex tasks and no more than superficial contact with the public.  According to Plaintiff, the VE's testimony was in direct conflict with vocational evidence in the record and with information contained in the Dictionary of Occupational Titles (DOT).  For the following reasons, Plaintiff's argument is not well taken.

The ALJ is under no obligation to investigate the accuracy of the VE's testimony beyond the inquiry mandated by Social Security Regulation 00-4p, because that obligation falls to the plaintiff's counsel, who had the opportunity to cross-examine the VE and bring out any conflicts with the DOT.  *Beinlich v. Comm'r of Soc. Sec.*, 345 F. App'x 163, 168 (6th Cir. 2009).  "The fact that plaintiff's counsel did not do so is not grounds for relief."  *Id.*; *see also Donahue v. Barnhart*, 446 F.3d 441, 446 (7th Cir.

19

2002) ("The ruling requires an explanation only if the discrepancy was 'identified'—that is, if the claimant (or the ALJ on his behalf) noticed the conflict and asked for substantiation.  Raising a discrepancy only after the hearing, as Donahue's lawyer did, is too late."). *But see* Overman v. Astrue, 546 F.3d 456, 463 (7th Cir. 2008) (explaining that apparent conflicts include those that were so obvious during the VE's testimony that the ALJ should have noticed them and elicited reasonable explanations).

Here, before the VE began his testimony, the ALJ asked him the following question:  "Do you understand that if you give us an opinion which conflicts with the information in the Dictionary of Occupational Titles that you need to advise us of the conflict and the basis for you opinion?"  (Tr. 237.)  The VE replied, "I will."  (*Id.*)  At the close of the VE's testimony, the ALJ asked the VE whether his testimony was "consistent with the information found in the Dictionary of Occupational Titles and its companion publication Selected Characteristics of Occupations defined in the revised DOT," and the VE responded "yes."  (Tr. 239.)  Plaintiff's counsel was afforded the opportunity to cross-examine the VE regarding his testimony as it related to Plaintiff's ability to perform her past relevant work, and she chose not to do so.  As Plaintiff's counsel did not raise the issue at the hearing, and the VE testified that his testimony was consistent with the DOT, the ALJ had no reason to suspect that an individual with Plaintiff's RFC would be incapable of performing work as a server or receptionist.  Because Plaintiff's counsel did not raise any discrepancy between the VE's testimony and the DOT at the hearing, Plaintiff cannot now argue that the ALJ erred by relying on the VE's testimony to find that Plaintiff can perform some of her past relevant work.  Plaintiff fails to explain how this testimony is an inadequate basis for the ALJ's

20

determination.  Given that Plaintiff's counsel did not challenge the VE's testimony

during the hearing, Plaintiff cannot now seek relief on this point.

### 3. New and Material Evidence Provides Good Cause for Remand.

After her administrative hearing, Plaintiff presented evidence to the Appeals

Council that had not been considered by the ALJ.  This evidence consisted of the

results of a lumbar MRI, patient notes from pain management physician Dr. Ryan, and

two RFC assessments from Dr. Ryan.

- **Lumbar MRI:** A lumbar MRI was performed on March 6, 2013, due to low back pain radiating to Plaintiff's right leg.  (Tr. 81.)  The MRI revealed lumbar disc abnormalities at L2, L3, and L4; limited facet arthropathy; neuroforaminal compromise and associated nerve root impingement at the L2, L3, and L4 levels; and a left paramedian Tarlov cyst at the S2 segment with splaying of the nerve roots on the left.  (*Id.*)

- **Patient Notes from Dr. Ryan:** Dr. Ryan began treating Plaintiff on May 16, 2013.  At that time, he noted that Plaintiff had low back pain for the past seven years and that she had a medical history significant for fibromyalgia, hypothyroidism, low back pain, and a Tarlov cyst at the S2 level that had been originally discovered several years earlier by MRI.  (Tr. 69.)

- **Medical Source Statements from Dr. Ryan:** On August 11, 2013, Dr. Ryan rendered an RFC assessment, wherein he noted that Plaintiff's sacral nerve had been crushed by a Tarlov cyst, making it too painful for Plaintiff to perform any degree of lifting, carrying, standing, walking, or sitting.  (Tr. 67.)  Dr. Ryan provided a second RFC assessment on December 12, 2013.  (Tr. 20.)  Dr. Ryan noted that Plaintiff had "S2 nerve splayed by Tarlov cyst on MRI."  (*Id.*)  He opined that Plaintiff could occasionally lift and/or carry five pounds, but that she could perform no standing, walking, or sitting.  (*Id.*)

The Appeals Council considered the aforementioned evidence, but found that the

records did not provide a basis for changing the ALJ's decision.  (Tr. 1-2.)  Plaintiff

argues that the Court should remand her case for further consideration of the records,

because the records are new and material to a determination of disability.

Under 42 U.S.C. § 405(g), a court "may . . . remand [a] case to the Commissioner . . .  for further action by the Commissioner . . . and it may at any time order additional evidence to be taken before the Commissioner . . . , but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding."  The party seeking remand under § 405(g) bears the burden of showing that remand is appropriate.  *See, e.g., Sizemore v. Sec. of Health & Human Servs.*, 865 F.2d 709, 711 (6th Cir. 1988).  Evidence is new only if it was "not in existence or available to the claimant at the time of the administrative proceeding."  *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001) (internal quotation marks omitted).  "In order for the claimant to satisfy this burden of proof as to materiality, he must demonstrate that there was a reasonable probability that the [Commissioner] would have reached a different disposition of the disability claim if presented with the new evidence."  *Sizemore*, 865 F.2d at 711.

Plaintiff had an MRI of her lumbar spine on December 27, 2011, which showed a Tarlov cyst at the S2 level.  (Tr. 664-665.)   The ALJ discussed the results of that MRI in his hearing decision.  (Tr. 150.)   Thus, both the December 2011 MRI, which the ALJ expressly considered, and the March 2013 MRI, which took place after the ALJ rendered his decision, showed a Tarlov cyst at the S2 segment.  The March 2013 MRI, however, showed a *splaying* of the Tarlov cyst.  (Tr. 81.)  Plaintiff maintains that the proffered medical evidence documenting a Tarlov cyst at the S2 segment with splaying of the nerve roots on the left constitutes material evidence that necessitates remand, because it demonstrates that Plaintiff's condition has progressively deteriorated since

22

the ALJ rendered his decision.  Plaintiff argues that "if the ALJ knew of the extent and effect of the cyst and of Dr. Ryan's strong opinion regarding Plaintiff's very restricted functional capacity, it is likely he would have reached a different decision."  (Pl.'s Br. 29.)

It is not clear whether evidence of a splaying Tarlov cyst would have supported a conclusion that Plaintiff's condition has deteriorated.  Nonetheless, even if Plaintiff's contention is assumed to be correct, it would be an insufficient reason for remanding Plaintiff's claim.  Plaintiff has presented no evidence demonstrating that the splaying of the Tarlov cyst occurred during the period of time considered by the ALJ.  Thus, the evidence Plaintiff presented to the Appeals Council is not time relevant, and therefore not material.  As the Sixth Circuit has observed, "[r]eviewing courts have declined to remand disability claims for reevaluation in light of medical evidence of a deteriorated condition."  *Sizemore*, 865 F.2d at 712 ("Evidence which reflected the applicant's aggravated or deteriorated condition is not relevant because such evidence does not demonstrate the point in time that the disability itself began.")  If Plaintiff's condition has seriously deteriorated since the ALJ rendered his decision, the appropriate action for Plaintiff to pursue would be to initiate a new claim for benefits as of the date her condition aggravated to the point of constituting a disabling impairment.  *Id.* (citations omitted).  For the foregoing reasons, Plaintiff is not entitled to remand.

## VI.    CONCLUSION

For the foregoing reasons, the Commissioner's final decision AFFIRMED.

**IT IS SO ORDERED**.

23

s/ *Nancy A. Vecchiarelli*
U.S. Magistrate Judge

Date: June 10, 2015